IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01036-PAB-MEH

LUKE IRVIN CHRISCO,

     Plaintiff,

v.

RICHARD F. RAEMISCH, Executive Director, Colorado Department of Corrections,
CAPTAIN GALLARDO, SCCF,
MS. KRAKOW, MHO, SCCF,
C.O. ESPINOSA, SCCF,
DR. RICHARD MALEY, SCCF MHP,
DONALD GIBSON, SCCF MHP,
MS. SPEARING, SCCF MHP,
LT. LYNN EDWARD TRAVIS, SCCF,
SGT. ULYSSES MONTOYA, SCCF,
SGT. ESLINGER, SCCF,
C.O. CORTEZ, SCCF,
C.O. COLLINS, SCCF,
C.O. SIERRA, SCCF,
C.O. KEYS, SCCF,
PAMELA JONES, LPN SCCF,
SGT. SHOFFLER, SCCF, and
LT. JOHN DOE, SCCF,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

     Plaintiff Luke Irvin Chrisco ("Plaintiff") proceeds pro se in this litigation and asserts seventeen claims against the various Defendants. In response, Defendants move to dismiss the majority of Plaintiff's claims. Finding that Plaintiff fails to state certain claims and that this Court lacks jurisdiction to hear the remainder, the Court respectfully recommends that the Honorable Philip

A. Brimmer grant the Motion.

## BACKGROUND

Plaintiff is incarcerated at San Carlos Correctional Facility ("SCCF") in the Colorado Department of Corrections ("CDOC"). Compl. 2, ECF No. 1. While Plaintiff's action was initiated in this court on April 26, 2017, *see id.* at 1, he deposited the Complaint within the SCCF mail system on April 24, 2017, *id.* Attach. 1, at 2, ECF No. 1-1, which is relevant to a dispute concerning the applicable statute of limitations. All factual allegations in the Complaint are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's first claim for relief arises from an incident that occurred on April 6, 2015. At approximately 11:00 p.m., Defendants Gallardo and Doe entered Plaintiff's cell to physically remove Plaintiff, because he had failed to uncover his cell window during shift change. Compl. ¶ 1. Plaintiff did not cooperate and instead protested by lying face-down on the floor. *Id.* ¶ 2. In response, Gallardo and Doe "introduced" "Oleam Resin military-grade foam gel" into Plaintiff's cell, and onto Plaintiff, through the cell tray slot. *Id.* After being hit with the gel, Plaintiff quickly cooperated, and the Defendants took him to a shower where he was able to rinse off the gel. *Id.* ¶ 3. However, after the shower, the "cell extraction team," under the direction of Gallardo and Doe, continued to physically manhandle Plaintiff while wearing gloves that were contaminated with the gel. *Id.* ¶ 4. This physical contact reapplied the gel onto Plaintiff. *Id.* Plaintiff protested about being exposed to the gel again but was told to be silent. *Id.* ¶ 5. Soon, the gel began to burn. *Id.* ¶ 6.

Plaintiff was then transferred to a cell that had been prepared by Defendant Espinosa, at the direction of Gallardo and Doe, such that the sink was turned off and the toilet did not work. *Id.* ¶ 7. There, Plaintiff attempted to rinse off the gel using the water in the toilet, *id.* ¶¶ 8, 10, but this

eventually compounded the problem as the toilet water became contaminated with the gel, *id.* ¶ 10. Plaintiff begged the unit guard Doxdettler to turn the water on, and, after forty-five minutes, Doxdettler agreed. *Id.* ¶ 11. However, because the operation of a separate valve unknown to Doxdettler was necessary to activate the cold water, he was only able to turn on the hot water. *Id.* ¶ 11. Plaintiff used the hot water to attempt to rinse off the gel, but doing so caused great pain. *Id.* ¶¶ 12–13. Doxdettler notified Gallardo and Doe about Plaintiff's condition, but they refused to allow Plaintiff a shower or to activate the cold water. *Id.* ¶ 13. Gallardo instructed Doxdettler to ignore Plaintiff's continued requests for attention. *Id.* ¶ 15.

Shortly thereafter, Plaintiff's nose began to bleed, and Plaintiff used his blood to write "NEED COLD WATER NOW" on the wall of the cell. *Id.* ¶ 16. This attracted Doxdettler's attention, and he called for a nurse. *Id.* ¶¶ 16–17. The nurse called for Defendant Krakow. *Id.* ¶ 17. Krakow "had" Plaintiff placed in restraints and had "mitts" put on his hands. *Id.* ¶ 18. These restraints caused Plaintiff great pain. *Id.* ¶ 19. Plaintiff was left in the restraints for three days, during which he continued to experience great pain in his hands. *Id.* ¶ 21. Plaintiff claims this incident violated his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff's second claim arises from events that began on April 15, 2015. *Id.* ¶ 26. On that date, Defendant Maley ordered Plaintiff be placed on a "Mental Health Watch" ("MHW") and additionally put him in ambulatory metal shackles and belly restraints, with his hands attached in cuffs at the waist. *Id.* ¶¶ 26–27. These restraints made it nearly impossible for Plaintiff to sleep. *Id.* ¶ 28. The restraints also caused wounds on Plaintiff's wrists and ankles. *Id.* ¶ 31. During the MHW, Plaintiff was subjected to "restraint checks" every two hours. *Id.* ¶ 29. During a restraint check, Plaintiff was removed from his cell by threat of force and shoved into a wall while a nurse

examined his restraints to ensure they were not too tight. *Id.* ¶ 29. Defendants Spearing and Gibson participated in conducting the restraint checks. *Id.* ¶ 30. Plaintiff alleges the purpose of the restraint checks was to deprive him of sleep. *Id.* Plaintiff alleges the goal of the MHW was to break his will to do legal work. *Id.* ¶¶ 27, 32. Plaintiff claims these checks violated his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff's third claim arises from conduct that occurred during an MHW from April 19 through April 24, 2015. *Id.* ¶ 36. During this time, Defendant Travis ordered Plaintiff's hands be secured behind his back (rather than at his sides) while in ambulatory restraints daily from 6 a.m. to 2 p.m. *Id.* Plaintiff refers to being secured in this manner as "hog tied." *Id.* At the end of Travis' shift, someone else returned Plaintiff's hands to a secured position at his sides. *Id.* ¶ 37. Plaintiff claims this conduct violated his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff's fourth claim arises from the identical conduct. Plaintiff alleges Defendant Travis knew Plaintiff had filed several grievances against SCCF and its law library. *Id.* ¶ 40. Plaintiff claims Travis had a retaliatory motive when he ordered Plaintiff hog tied during the April 2015 MHW. *Id.* ¶¶ 42–43. Plaintiff alleges he began to suffer neuropraxia of the wrists and hands as a result of the being hog tied. *Id.* ¶ 44. He also alleges he had "PTSD-like symptoms" in which he would have nightmares and flashbacks about the abuse. *Id.* Plaintiff alleges Travis violated the First Amendment by retaliating against Plaintiff's use of process.

Plaintiff's fifth claim arises from an incident that occurred on April 17, 2015. *Id.* ¶ 46. On that date, Defendant Montoya, Defendant Eslinger, and C.O. Andrade entered Plaintiff's cell while he was attempting to sleep. *Id.* Montoya and Andrade held Plaintiff down with a plastic shield, and

Montoya ordered Eslinger to begin "smashing/forcing" his tazer into Plaintiff's right shin, where he had scar tissue from a previous injury. *Id.* ¶¶ 46–47. Eslinger also put his knee into Plaintiff's shin in an attempt to cause additional pain. *Id.* ¶ 48. Plaintiff continues to experience pain in his leg. *Id.* ¶ 49. Plaintiff alleges this incident violated his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff's sixth claim arises from conduct that occurred on April 21, 2015. *Id.* ¶ 54. On that date, Defendants Cortez, Collins, and Sierra entered Plaintiff's cell and, while he was in ambulatory restraints, threw him into the concrete bunk. *Id.* ¶ 55. Collins then "pummeled" Plaintiff in the side and back, Sierra stomped on Plaintiff's leg shackles, and Cortez elbowed Plaintiff in the spine and ribs. *Id.* Plaintiff did nothing to resist the beating, because his arms were chained to his sides by the restraints. *Id.* ¶ 56. Plaintiff alleges this incident violated his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff's seventh claim arises from events that occurred on April 25, 2015. *Id.* ¶ 59. On that date, Defendant Keys, Defendant Eslinger, and C.O. Downard completed a restraint check in Plaintiff's cell. *Id.* As they were leaving, Plaintiff asked Keys, "What's your name?" *Id.* ¶ 60. Keys responded by reentering the cell and shoving Plaintiff with both hands in the chest, pushing Plaintiff backward. *Id.* ¶ 61. Plaintiff stumbled and hit his head on the concrete bunk. *Id.* ¶ 62. Plaintiff lost consciousness and suffered a quarter-sized hematoma on the top of his head. *Id.* ¶¶ 62–63. He awoke to Keys, Eslinger, Downard, and Defendant Jones laughing at his injuries. *Id.* ¶ 62. Defendants then left Plaintiff's cell, and he spent the next ten minutes requesting a nurse. *Id.* ¶¶ 64–65. Soon, guards summoned Jones back to Plaintiff's cell. *Id.* ¶ 65. Jones examined Plaintiff and confirmed he had abrasions and a bump on his head. *Id.* Plaintiff requested pain medication,

but Jones refused to provide any. *Id.* Plaintiff alleges Keys' conduct violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff additionally alleges that Jones' decision to deny him medical care violated his Eighth Amendment right.

Plaintiff's eighth claim arises from an incident that occurred on April 23, 2015. *Id.* ¶ 70. On that date, Defendants Shoffler and Montoya entered Plaintiff's cell to deliver his breakfast. *Id.* After two minutes, they decided that they would not allow him to finish his breakfast. *Id.* ¶ 70. Plaintiff then (in ambulatory restraints) grabbed a pancake in each hand. *Id.* Shoffler ordered Plaintiff to "drop the pancakes." *Id.* ¶ 71. Plaintiff refused. *Id.* Shoffler and Montoya then employed physical joint-manipulation techniques to remove the pancakes. *Id.* Unsuccessful, the two Defendants moved Plaintiff from his cell to the hallway, where they employed "more aggressive" joint-manipulation techniques. *Id.* ¶ 72. Ultimately, Plaintiff released the pancakes for fear of serious injury. *Id.* Plaintiff alleges this incident violated his Eighth Amendment right to be free from cruel and unusual punishment.

## LEGAL STANDARDS

### I.     Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A Rule

12(b)(1) motion to dismiss must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008). Accordingly, Plaintiff here bears the burden of establishing that the Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002–03 (citations omitted). The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the factual allegations for its Rule 12(b)(1) analysis.

## II.     Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## III.   Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers . . . ." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## <u>ANALYSIS</u>

Plaintiff's Complaint brings seventeen claims for relief against the various Defendants, and the claims can be separated into two broad categories. The first category includes eight claims against Defendants in their individual capacities and seeks compensatory and punitive damages for alleged deprivations of Plaintiff's constitutional rights. The second category consists of nine claims

against Defendant Raemisch in his official capacity and asks the Court to enjoin future enforcement of CDOC Administrative Regulation 700-29 and other allegedly unconstitutional policies and practices. Plaintiff brings these claims pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Defendants now bring the present motion and ask the Court to dismiss the majority of Plaintiff's claims.

## I.      Claims Against Defendants in Their Individual Capacities

Defendants argue the majority of Plaintiff's claims against the Defendants in their individual capacities should be dismissed, because they are barred by the statute of limitations. Defendants also argue the Court should dismiss many of the claims, because the Defendants are entitled to qualified immunity.

### A.      Statute of Limitations

Defendants ask the Court to dismiss claims one through six and claim eight, because they are barred by the statute of limitations. The applicable statute of limitations (and accompanying tolling provision) for § 1983 claims is determined by state law. *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). The forum state's statute of limitations for general personal injury actions governs those claims. *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). In Colorado, the relevant statute provides a two-year limitations period. *Fogle v. Pierson*, 435 F.3d 1252, 1258

(10th Cir. 2006); *Mwangi v. Norman*, No. 16-cv-00002-CMA-NYW, 2016 WL 7223270, at *5 (D. Colo. Dec. 13, 2016) (citing Colo. Rev. Stat. § 13-80-102(1)(g)). While state law provides the relevant statute of limitations, federal law governs when those claims accrue. *Beck*, 195 F.3d at 557. A § 1983 action "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (quoting *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993)).

Here, Plaintiff submitted the Complaint to the SCCF prison mail system on April 24, 2017. *See* Compl. Attach. 1 at 2, ECF No. 1-1. Thus, Defendants argue any claim that accrued before April 24, 2015, is not timely. Mot. 4–7, ECF No. 32. Defendants proceed to argue (and Plaintiff does not rebut) that each of these claims accrued before April 24, 2015. *Id.* Plaintiff does not dispute that these claims accrued prior to the two-year period, but argues that the Court should equitably toll the deadline. Resp. 35, ECF No. 60. Plaintiff argues, "The facts of this case should lead the Court to conclude that Defendant Org's[1] wrongful conduct of preventing [P]laintiff from possessing or obtaining a copy of his prisoner complaint during March 26th to April 24th . . . entitles Plaintiff to equitable tolling of the relevant [statute of limitations] under Colorado precedent . . . ." *Id.*

Like the applicable statute of limitations, whether the limitations period should be tolled is governed by state law. *Fratus*, 49 F.3d at 675. Colorado law provides that "[o]nce the statute of limitations is raised as a defense[,] the burden of proof shifts to the party asserting that its application should be equitably tolled." *Sharp Bros. Contracting Co. & Sanders Co., Inc. v. Westvaco Corp.*, 878 P.2d 38, 44 (Colo. App. 1994). In Colorado, " [t]he doctrine of equitable tolling is limited to

---

[1] The Court reads Plaintiff's reference to an "Org" to mean an unspecified organization. As discussed below, there are no organizational defendants to the present suit.

situations in which either the defendant's wrongful conduct prevented the plaintiff from asserting the claims in a timely manner or truly exceptional circumstances prevented the plaintiff from filing the claim despite diligent efforts." *Noel v. Hoover*, 12 P.3d 328, 330 (Colo. App. 2000). Here, Plaintiff argues that the Court should toll the limitations period, because the Defendants' wrongful conduct prevented him from timely filing his Complaint. Resp. 35.

"Generally, in order for a statute of limitations to be tolled because of equitable considerations, the party asserting the statute as a defense must be the party engaging in conduct that would make the application of the statute inequitable." *Sharp Bros.*, 878 P.2d at 44. Here, Plaintiff argues that "the Defendant Org's wrongful conduct of preventing [P]laintiff from possessing or obtaining a copy of his prisoner complaint during March 26th to April 24th, 2017, entitles Plaintiff to equitable tolling . . . ." Resp. 35. Additionally, Plaintiff argues the "obstructionist tactics" by the SCCF law library prevented him from filing his complaint during this time period. *Id.* However, neither a "Defendant Org" nor the SCCF law library is a defendant to this lawsuit.

Plaintiff's argument that a "Defendant Org" acted wrongfully to prevent Plaintiff from filing his complaint, Resp. 35, has no meaning to the Court. There are no organizational defendants to the present suit. Plaintiff does not assert that any of the Defendants (who are all individuals) to this suit engaged in any wrongful conduct that prevented him from filing his complaint. *See id.* Absent bad-faith tactics by a defendant who is a party here, Colorado law does not permit a court to toll the statute of limitations. *Sharp Bros.*, 878 P.2d at 44. Therefore, the Court respectfully recommends dismissing these claims.

B.    Qualified Immunity

Defendants also argue the Court should dismiss Defendant Jones from claim seven,[2] because she is entitled to qualified immunity.  Mot. 25–26.  Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "It 'is an entitlement not to stand trial or face the other burdens of litigation.  The privilege is an immunity from suit rather than a mere defense to liability.'"  *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (quoting *Roska v. Peterson*, 328 F.3d 1230, 1239 (10th Cir. 2003)).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236; *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Plaintiff's seventh claim asserts that Defendant Jones' decision not to provide pain medication after Plaintiff suffered a hematoma when Keys shoved him into a concrete bunk amounted to a violation of the Eighth Amendment's prohibition of cruel and unusual punishment.  Compl. ¶¶ 58–69, ECF No. 1.  "[P]rison officials violate the Eighth Amendment's ban on cruel and

---

[2] Defendants make no argument seeking to dismiss claim seven as alleged against Defendant Keys.

unusual punishment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference has both an objective and subjective component." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). "Under the objective inquiry, the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self*, 439 F.3d at 1230 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt*, 199 F.3d at 1224). However, a "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in *substantial harm*." *Id.* (emphasis added) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)). "[U]nder the subjective inquiry, the prison official must have a 'sufficiently culpable state of mind.'" *Self*, 439 F.3d at 1230–31.

Here, Plaintiff's claim fails, because he has not alleged that any inaction by Defendant Jones resulted in "substantial harm." Plaintiff alleges that Keys shoved him backward in his cell, which caused Plaintiff to fall and hit his head on a concrete bunk. Compl. ¶ 62. As a result, Plaintiff lost consciousness and suffered a hematoma on his head as well as other abrasions. *Id.* ¶¶ 62–63. Plaintiff alleges that shortly after his fall, Jones evaluated him and otherwise did not provide any treatment. *Id.* ¶ 65. Critically, Plaintiff does not allege any other "substantial harm" resulted from Jones' decision not to provide further treatment. *Oxendine*, 241 F.3d at 1276. While Plaintiff complains that Jones refused to provide the pain medication he requested, Compl. ¶ 65, "a prisoner

14

who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation[,]" *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). Because Plaintiff does not allege that any substantial harm resulted from Jones' decision not to provide further medical care, the Court respectfully recommends the claim be dismissed.

## II. Claims Against Defendant Raemisch in His Official Capacity

Plaintiff's remaining claims ask the Court to enjoin Defendant Raemisch from enforcing allegedly unconstitutional regulations or policies. But before reaching Defendants' arguments, the Court perceives potential jurisdictional issues that may prevent it from reaching the claims. The Court is concerned that Plaintiff does not have standing to challenge the regulations and policies and must assure itself that Plaintiff meets this constitutional requirement. *Rector v. City & County of Denver*, 348 F.3d 935, 942 (10th Cir. 2003) ("Standing . . . raises jurisdictional questions and [a court is] required to consider 'the issue sua sponte to ensure that there is an Article III [C]ase or [C]ontroversy' before [it]." (quoting *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002))). The Court therefore addresses the question of standing sua sponte. Once the Court is satisfied of its jurisdiction to hear any or all of Plaintiff's claims, it will proceed to those merits.

### A. Standing

"Article III, Section 2 of the United States Constitution extends the judicial power only to 'Cases' or 'Controversies.' A dispute is an Article III 'Case' or 'Controversy' only if the plaintiff can establish what is known as 'constitutional standing.'" *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1210 (10th Cir. 2006) (quoting *Carolina Cas. Ins. Co. v. Pinnacol Assurance*, 425 F.3d 921, 926 (10th Cir. 2005)). "Article III standing . . . requires that a plaintiff establish

injury-in-fact, causation[,] and redressability." *Finstuen v. Crutcher*, 496 F.3d 1139, 1143 (10th Cir. 2007). "The 'injury in fact' requirement differs 'depending on whether the plaintiff seeks prospective or retrospective relief.'" *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (quoting *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004)). "When prospective relief—such as an injunction—is sought, 'the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future.'" *Id.* (quoting *Tandy*, 380 F.3d at 1283). "In a plea for injunctive relief, a plaintiff cannot maintain standing by asserting an injury based merely on 'subjective apprehensions' that the defendant might act unlawfully." *Finstuen*, 496 F.3d at 1144 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983)). A "Case" or "Controversy" does not exist "absent a real and immediate threat of future injury by the defendant." *Lyons*, 461 U.S. at 107 n.8.

To evaluate standing, Plaintiff's nine claims for injunctive relief can be separated into two categories. The first category asserts constitutional challenges to CDOC Administrative Regulation 700-29 ("A.R. 700-29"),[3] which the CDOC has promulgated to govern Mental Health Interventions, which in turn establishes the procedures for MHWs. *See* A.R. 700-29(D)–(J). Claims nine through

---

[3] Defendants submit a copy of A.R. 700-29 for the Court to consider in the disposition of the motion. Rule 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." However, the Tenth Circuit has provided that where a "document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

The Court finds that it may consider A.R. 700-29 in deciding the Motion to Dismiss. Plaintiff's Complaint frequently refers to A.R. 700-29. *See, e.g.*, Compl. ¶¶ 83, 90, 104, 106, 109. Second, many of Plaintiff's claims ask the Court to declare A.R. 700-29 unconstitutional, *id.* at 23, so the Court finds it is central to Plaintiff's claims. Finally, Plaintiff does not dispute that the copy submitted by Defendants is authentic.

fifteen fall into this category. The second category includes claims sixteen and seventeen and asks the Court for injunctions against specific conduct that Plaintiff alleges happened to him in the past.

### 1. *A.R. 700-29*

Plaintiff's claims nine through fifteen ask the Court to declare aspects of A.R. 700-29 unconstitutional. Plaintiff's allegations that he has been subject to the requirements of A.R. 700-29 are ubiquitous in the Complaint. *See, e.g.*, ¶ 88. Past enforcement of a law or regulation is strong evidence that the threat of future enforcement is not chimerical. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2345 (2014). The Court finds Plaintiff has standing to challenge this regulation.

### 2. *Other Conduct*

Plaintiff's sixteenth and seventeenth claims ask the Court to enjoin Raemisch from assorted other practices. The sixteenth claim asks the court to enjoin the alleged practice of "hog tying" prisoners. The seventeenth claim asks the Court to enjoin activity that would lead to the re-application of OC Gel after the prisoner had decontaminated from exposure to the gel. The Court finds the Plaintiff does not have standing to challenge these events.

Plaintiff's allegations pertaining to being "hog tied" allege that Travis ordered Plaintiff to be "hog tied" from 6 a.m. to 2 p.m. between April 19 and April 25, 2015. However, Plaintiff makes no allegation that he will be immediately "hog tied" in the future. Similarly, Plaintiff's allegation pertaining to OC Gel involves a single incident in which he was exposed to the gel, had the opportunity to rinse the gel, and then was re-exposed to the gel due to physical contact with others who had the gel on them. Compl. ¶¶ 1–5. The Complaint makes no allegation that this sequence of events will imminently happen again.

*Lyons* demonstrates that Plaintiff does not have standing to challenge the conduct in these

claims. In *Lyons*, four Los Angeles police officers used a "choke hold" on the plaintiff, and the plaintiff sought an injunction enjoining the police department from using the maneuver in the future. *Lyons*, 461 U.S. at 97–98. However, the Supreme Court found that the plaintiff did not have standing to obtain injunctive relief, because the plaintiff "made an 'insufficient showing that the police were likely to do this to the plaintiff again.'" *Id.* at 107 (quoting *Lyons v. City of Los Angeles*, 615 F.2d 1243, 1246 (9th Cir. 1980)).

Here, Plaintiff makes no allegation that the complained-of conduct is likely to happen again. Absent the imminent threat, this Court does not have jurisdiction to hear the claims. The Court therefore respectfully recommends claims sixteen and seventeen be dismissed.

B.    Merits

The Court proceeds to the merits of Plaintiff's remaining claims for injunctive relief. The claims challenge the constitutionality of A.R. 700-29 in various respects.

1.    *Claim Nine*

Plaintiff's ninth claim asks the Court to declare A.R. 700-29 unconstitutional, because it compels his speech in violation of the First Amendment. Compl. 23. Plaintiff alleges that after an inmate at SCCF is put on an MHW, "[the] prisoner[] . . . [is] required to engage in extensive [mental health] interviews . . . in order to even be considered for release from CDOC imposed [MHWs]." *Id.* ¶ 77. Plaintiff alleges that a prisoner on MHW is required to "engage in . . . psychiatric evaluation while on the watch and volunteer information about all manner of his personal beliefs . . . ." *Id.* ¶ 80. He alleges "[i]f [a prisoner] does not cooperate with the interviews . . . he is kept on the watch indefin[ite]ly . . . ." *Id.* ¶ 81. Plaintiff argues "[t]he . . . net effect of these . . . restrictions . . . is to compel prisoners such as [Plaintiff] to consent to participate in psychiatric treatment [and]

18

. . . ultimately compel[s] speech in violation of the First Amendment . . . ." *Id.* ¶ 86.

"[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). However, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012). "[T]he standard of review [the Supreme Court] adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights." *Washington v. Harper*, 494 U.S. 210, 224 (1990).

"[S]everal factors are relevant in determining the reasonableness of the regulation at issue." *Turner*, 482 U.S. at 89. Those factors are:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (citing *Turner*, 482 U.S. at 89–91). Of these factors, "the first is the most important; as [the Tenth Circuit] ha[s] noted, it is 'not simply a consideration to be weighed but rather an *essential requirement*.'" *Al-Owhali*, 687 F.3d at 1240 (emphasis added) (quoting *Boles v. Neet*, 486 F.3d 1177, 1181 (10th Cir. 2007)). Thus, to survive a motion to dismiss, a prisoner must "plead facts from which a plausible inference can be drawn that

the action was not reasonably related to a legitimate penological interest." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010). "This is not to say that [a prisoner-plaintiff] must identify every potential legitimate interest and plead against it. However, he is required to 'recite[] facts that might well be unnecessary in other contexts' to surmount a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Al-Owhali*, 687 F.3d at 1240 (second alteration in original) (citation omitted) (quoting *Gee*, 627 F.3d at 1185).

Here, Plaintiff's claim fails, because the Complaint does not make any allegation that A.R. 700-29 is not reasonably related to a legitimate penological interest. The omission of this "essential element" is dispositive. *Al-Owhali*, 687 F.3d at 1240. The Court therefore respectfully recommends the claim be dismissed.

## 2. *Claims 10 and 12*

Plaintiff's tenth and twelfth claims present Eighth Amendment "conditions of confinement" challenges to A.R. 700-29. The tenth claim argues the metal ambulatory restraints used during MHWs violate the Eighth Amendment. Compl. ¶¶ 89–96. The twelfth claim alleges MHWs cause unconstitutional sleep deprivation. *Id.* ¶¶ 105–124.

"To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is '"sufficiently serious"' to implicate constitutional protection, and (2) prison officials acted with '"deliberate indifference" to inmate health or safety.'" *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective element is only met if the prisoner alleges that the conditions deprived him of "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *Mitchell*

*v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996). To meet the second element, "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *DeSpain*, 264 F.3d at 972 (alterations in original) (quoting *Farmer*, 511 U.S. at 835). "A finding of deliberate indifference requires a showing that the defendant 'knows of and disregards an excessive risk to inmate health or safety.'" *Custard v. Turner*, No. 06-cv-01036-WYD-CBS, 2007 WL 2872436, at *5 (D. Colo. Sept. 26, 2007) (quoting *Farmer*, 511 U.S. at 834).

i.    Metal Restraints that Are Not Padded

Plaintiff's claim here is founded on the premise that CDOC's practice of using metal restraints that are not in some way padded violates his Eighth Amendment rights. Plaintiff claims these restraints cause pain and loss of circulation. Compl ¶¶ 92–93. Even if these allegations amounted to a "sufficiently serious" condition to meet the objective prong, the Court finds the allegations fail to state a claim, because Plaintiff does not allege that Raemisch acted with deliberate indifference.

Plaintiff alleges "Defendant Raemis[c]h is responsible for drafting, updating[,] . . . implementing[,] and enforcing A.R. 700-29 and the policies and customs surrounding the use of unpadded metal restraints as executive dir[ector] of the CDOC." *Id.* ¶ 104. Plaintiff also alleges that A.R. 700-29 permits that ambulatory restraints "may consist of metal universal restraint system[s] . . . ." *Id.* ¶ 90 (first alteration in original). However, Plaintiff's claim is founded on the allegation that these restraints cause pain and cut off circulation. *Id.* ¶¶ 92–93. Plaintiff makes no allegation that Raemisch knew of any risk that the restraints were causing pain or loss of circulation. Without knowledge of an excessive risk to inmate safety, Raemisch could not demonstrate the necessary

deliberate indifference. Therefore, the Court respectfully recommends the claim be dismissed.

ii.     Sleep Deprivation

The basis of Plaintiff's twelfth claim is somewhat unclear. Plaintiff alleges that A.R. 700-29 causes a prisoner to be deprived of sleep, but the allegations do not clearly articulate how the regulation causes this sleep deprivation. Construing the allegations liberally, the Court will assume Plaintiff alleges the bi-hourly restraint checks violate the Eighth Amendment. *See* Compl. ¶ 123 (complaining of "sleep deprivation" and "restraint checks"). Plaintiff alleges these restraint checks happen every two hours when a prisoner is on MHW. *Id.* ¶ 81. Plaintiff alleges "[t]he main purpose of the 'restraint checks' [is] to sleep deprive [Plaintiff] . . . ." *Id.* ¶ 29.

At worst, Plaintiff is alleging that prison officials wake Plaintiff to perform restraint checks three or four times during a night of eight-hours sleep. This is not sufficient to meet the first prong of an Eighth Amendment violation—that he is being deprived of the "minimal civilized measure of life's necessities." *Silverstein v. Fed. Bureau of Prisons*, No. 07-cv-02471-PAB-KMT, 2011 WL 4552540, at *18 (D. Colo. Sept. 30, 2011) (finding that conditions where a prisoner was able to get 4-5 hours of sleep "do[] not objectively amount to a serious deprivation of the basic human need for sleep"); *Walton v. Grounds*, No. SA-10-CA-60-NSN, 2011 WL 632842, at *2 (W.D. Tex. Feb. 11, 2011) (finding "intermittent disruptions" to a prisoner's sleep insufficient to state an Eighth Amendment claim without injury); *Blakely v. Snively*, No. C07-1803RAJ, 2008 WL 4643831, at *6–7 (W.D. Wash. Oct. 17, 2008) (finding conditions where an inmate heard an hourly "vibrating bang" from a security door during his sleep not "sufficiently serious" to state and Eighth Amendment claim).

Plaintiff's allegations additionally fail to allege that Defendant Raemisch acted with

deliberate indifference to this complaint. Plaintiff makes no allegation that he notified any prison official that the bi-hourly restraint checks were causing sleep deprivation. *Garrett v. Thaler*, 560 F. App'x 375, 380 (5th Cir. 2014) (finding allegations that a prisoner "repeatedly complained to the prison medical staff about the sleep deprivation" sufficient to allege deliberate indifference by the officials). Therefore, the Court respectfully recommends the claim be dismissed.

3. *Claim 11*

Plaintiff's eleventh claim alleges that A.R. 700-29's use of metal restraints that are not padded with leather or fabric violates the Due Process Clause of the Fourteenth Amendment. The Complaint does not make clear whether this claim is founded in procedural or substantive due process. Construing the document liberally, the Court assumes Plaintiff asserts both claims.

i. Procedural Due Process

"An alleged violation of the procedural due process required by [the Fourteenth Amendment] prompts a two-step inquiry: '(1) whether the plaintiff has shown the deprivation of an interest in 'life, liberty, or property' and (2) whether the procedures followed by the government in depriving the plaintiff of that interest comported with 'due process of law.'" *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012) (quoting U.S. Const. amend. XIV, § 1). Thus, the first inquiry is whether the Plaintiff has alleged a deprivation of a liberty or property interest.

"A protected interest in liberty or property may have its source in either federal or state law." *Id.* Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Veile v. Martinson*, 258 F.3d 1180, 1185 (10th Cir. 2001) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564,

577 (1972)).

Here, Plaintiff does not cite to any authority, and the Court has also found none, that would suggest Plaintiff has a liberty or property interest in ambulatory restraints that are in some manner padded by leather or cloth. Therefore, the Court respectfully recommends the procedural due process claim be dismissed.

ii.     Substantive Due Process

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "The 'ultimate' standard for determining whether there has been a substantive due process violation is 'whether the challenged government action shocks the conscience of federal judges.'" *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002)). The Tenth Circuit has required that the "conscience-shocking" standard demonstrate "a high level of outrageousness." *Id.* at 1041 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)). Here, the Court's conscience is not shocked by the prison's use of metal restraints that are not padded with fabric. *See Martinez v. Uphoff*, 265 F.3d 1130, 1135 (10th Cir. 2001) (allegations that prison was inadequately staffed not conscience shocking); *Damm v. Sparkman*, 609 F. Supp. 749, 754 (D. Kan. 1985) (officer that struck arrested individual six to eight times after he had disobeyed the officer's instructions not conscience shocking). The Court respectfully recommends the substantive due process claim be dismissed.

4.     *Claim 13*

Plaintiff's thirteenth claim alleges an equal protection violation against the "class of persons

24

defined as prisoners alleged to be mentally ill, or who have a mental illness and[]either have or have not been cured of . . . it." Compl. ¶ 126. "An equal protection violation occurs when the government treats someone differently than another who is similarly situated." *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). However, as stated above addressing Plaintiff's ninth claim, *see supra* section III.B.1, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw*, 532 U.S. at 229. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Thus, to succeed on an equal protection claim, Plaintiff will have to allege he was treated differently than "similarly situated" prisoners and "that the difference in treatment was not 'reasonably related to legitimate penological interests.'" *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (quoting *Turner*, 482 U.S. at 89). Further, if an equal protection claim is based on a classification that is not a protected class, nor does it implicate a fundamental right, the claim is subject only to "rational-basis" review and "must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320–21 (1993) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)); *Hill v. Pugh*, 75 F. App'x 715, 720 (10th Cir. 2003) (stating that where a classification does not implicate a suspect class or burden a fundamental right, "[t]he only proper judicial inquiry is whether the challenged classification bears a rational relationship to a legitimate penological concern").

Here, Plaintiff defines the disparately treated class of which he is a member as "persons defined as prisoners alleged to be mentally ill, or who have a mental illness and[]either have or have not been cured of/recovered from it." Compl. ¶ 126. Plaintiff alleges this class is treated differently

than "regular prisoners" when a member engages in "disruptive behavior." *Id.* ¶ 127. Plaintiff alleges that when a regular prisoner engages in disruptive behavior, that behavior is either tolerated or met with "disciplinary writeups and formal punishment[] . . . ." *Id.* Conversely, Plaintiff alleges that when members of the defined class engage in the same behavior, "they are not given disciplinary violations but are instead placed on [MHWs] or forced med[ical] regimens." *Id.*

First, the Court finds that Plaintiff's claim implicates neither a protected class nor a fundamental right. The purported class, as defined by Plaintiff, is not a protected class. *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109 (10th Cir. 2008) (listing race and national origin as suspect classes and gender and illegitimacy as quasi-suspect classes in a non-exhaustive list of protected classes). Plaintiff argues that the Court should find that mentally ill persons are a protected class and apply a higher standard of scrutiny. *See* Resp. ¶ 74. The Court declines to do so for two reasons. First, Plaintiff does not define the relevant class as mentally ill persons, but also includes prisoners "alleged to be mentally ill" and individuals who "have been cured" of mental illness. Compl. ¶ 126. The Court finds that this vaguely-described category of individuals is not entitled to heightened protection. Second, even if the Court were to liberally construe Plaintiff's alleged class as mentally ill persons, Supreme Court and Tenth Circuit precedent suggests rational-basis review applies. *See Heller*, 509 U.S. at 318–19 (applying rational-basis review to classes of mentally retarded and mentally-ill individuals); *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005) (applying rational-basis review to the class of "disabled persons"). The Court also finds that engaging in "disruptive behavior" is not a fundamental right. *Kitchen v. Herbert*, 755 F.3d 1193, 1208–09 (10th Cir. 2014) ( "To qualify as 'fundamental,' a right must be 'objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty,

such that neither liberty nor justice would exist if [it] were sacrificed." (alteration in original) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

Applying rational-basis review, the Court finds that Plaintiff has failed to allege an equal protection violation. Under rational-basis review, "a classification . . . is accorded a strong presumption of validity." *Heller*, 509 U.S. at 319. "[A] classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* at 320 (quoting *Beach Commc'ns, Inc.*, 508 U.S. at 313). A court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003); *Wirsching v. Colorado*, 360 F.3d 1191, 1203–04 (10th Cir. 2004).

Here, Defendants argue the CDOC's policy of treating mentally ill prisoners and non-mentally ill prisoners differently furthers a legitimate penological interest. However, Defendants do not so much as articulate what that legitimate penological interest is. Mot. 20 ("In a prison context, it would make perfect sense and advance a legitimate penological interest to treat [mentally ill and non-mentally ill prisoners] differently under certain circumstances."); Reply 4, ECF No. 74 (same). Nevertheless, promoting prison safety is a legitimate penological interest. *Yellowbear v. Hargett*, No. 15-CV-213-J, 2016 WL 10520959, at *17 (D. Wyo. Dec. 19, 2016) (noting the Wyoming Department of Corrections has "a compelling governmental and penological interest in prison safety"); *Ciempa v. Jones*, 745 F. Supp. 2d 1171, 1193 (N.D. Okla. 2010) (recognizing the "legitimate penological interest of maintaining prison safety"). And given a prison regulation's "strong presumption of validity," *Heller*, 509 U.S. at 319, A.R. 700-29 is rationally related to

furthering that interest. Therefore, the Court respectfully recommends the claim be dismissed.

5. *Claim 14*

Plaintiff's fourteenth claim alleges that the word "disruptive" in A.R. 700-29 is overbroad. Compl. ¶ 137. While the Complaint purports to ground this claim in "federal common law," *id.*, the overbreadth doctrine is founded in the First Amendment, *see Faustin v. City & County of Denver*, 423 F.3d 1192, 1199 (10th Cir. 2005), and the Court construes the Complaint as alleging A.R. 700-29 violates the First Amendment. However, the Court finds it unnecessary to perform an overbreadth analysis of A.R. 700-29, because even if the regulation is overbroad, a prisoner's overbreadth challenge to a prison regulation remains subject to a *Turner* analysis,[4] *see Fawley v. Geo Group, Inc.*, No. CIV 11-0181 LH/KBM, 2013 WL 12140995, at *25 (D. Colo. Mar. 18, 2013); *Rooks v. Zavares*, No. Civ.A. 99-B-631, 2001 WL 34047959, at *8 (D. Colo. Jan. 25, 2001); *Cuoco v. Hurley*, No. 98-D-2438, 2000 WL 1375273, at *3 (D. Colo. Sept. 22, 2000), and Plaintiff does not allege the "essential requirement" of *Turner*.

As discussed above, a *Turner* analysis states that "when a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Under *Turner*, the Tenth Circuit requires that a prisoner must "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest" to survive a motion to dismiss. *Gee*, 627 F.3d

---

[4] The Ninth Circuit has additionally applied the *Turner* test to overbreadth challenges to prison regulations. *Bahrampour v. Lampert*, 356 F.3d 969, 975–76 (9th Cir. 2004). Moreover, the Seventh Circuit has ruled that the overbreadth doctrine "ha[s] only limited relevance to a sphere where the right of free speech is limited." *Koutnik v. Brown*, 456 F.3d 777, 782–83 (7th Cir. 2006). The Seventh Circuit reasoned that since prisoners have limited First Amendment rights, the doctrine has "limited or no[]" role "in civil litigation dealing with prisons' internal operations." *Id.* at 783 (quoting *Borzych v. Frank*, 439 F.3d 388, 391 (7th Cir. 2006)).

at 1188. This allegation is an "essential requirement" to a prisoner's claim. *Al-Owhali*, 687 F.3d at 1240. Here, Plaintiff again does not make this allegation. Therefore, the Court respectfully recommends the claim be dismissed.

6. *Claim 15*

Plaintiff's fifteenth claim is styled as follows:

CLAIM FIFTEEN – CONDITIONAL PROPERTY ALLOCATION AND PROGRESSION
OUT OF CLINICAL RESTRAINTS BASED ON PRISONERS['] ACCEPTANCE
OF MEDICAL TREATMENT CONSTITUTES AN "UNCONSTITUTIONAL CONDITION"
AND VIOLATES P[LAINTIFF]'S RIGHT TO REFUSE MEDICAL TREATMENT . . . .

Compl. 21. Both parties' arguments relating to this claim proceed under the premise that Plaintiff is bringing a claim that asserts a right to refuse medical treatment. For example, Defendants cite to *Pabon v. Wright*, 459 F.3d 241 (2d Cir. 2006). While that case involved a prisoner who agreed to treatment he otherwise would have refused had he been adequately informed of its risks, *id.* at 246–47, in it, the Second Circuit recognized a prisoner's Fourteenth Amendment liberty interest to refuse medical treatment, *id.* at 247. Similarly, Plaintiff cites to *Vitek v. Jones*, 445 U.S. 480 (1980). There, the Supreme Court decided that a state's decision to involuntarily transfer a prisoner to a mental hospital implicates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Id.* at 487. The Court held "[a] criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, but they do not authorize the State to classify him as mentally ill and to *subject him to involuntary psychiatric treatment* without affording him additional due process protections." *Id.* at 493–94 (emphasis added). For clarity, the Court believes *Washington v. Harper*, 494 U.S. 210 (1990) provides a paradigmatic example of a state imposing medical treatment against a prisoner's consent. There, the

state *administered* antipsychotic medication to a prisoner against the prisoner's will. *Id.* at 217 (emphasis added).

The Court does not agree that Plaintiff's claim involves forced medical treatment. Nowhere in the Complaint does Plaintiff allege that he receives medical treatment against his will. Indeed, Plaintiff alleges he is fully capable of refusing medical treatment. Compl. ¶ 82. Plaintiff states he has "maintained privacy and refused to volunteer personal information or submit to p[]sychiatric treatment . . . ." *Id.* Plaintiff explicitly alleges "[p]risoners retain the right to refuse [medical] treatment while on CDOC [Mental Health] Watches." *Id.* ¶ 139. Thus, this is not a case like *Washington* in which the state administered medical treatment against Plaintiff's will. To the extent Plaintiff brings such a claim, the Court respectfully recommends it be dismissed.

Instead, the Court construes Plaintiff's fifteenth claim as alleging SCCF's practice of denying Plaintiff certain constitutional rights while he is on MHW, and the requirement that he cannot get off MHW without participating in mental health treatment, as an unconstitutional restriction on those constitutional rights. Plaintiff alleges "[i]n order to gain the benefit of being let out of restraints and given clothing . . . or a pen and paper to record events[,] one must give up said right to refuse treatment." Compl. ¶ 140. Plaintiff alleges this consent to medical treatment amounts to an "unconstitutional condition" to be permitted the exercise of certain constitutional rights. *Id.*

Addressing this claim under the *Turner* analysis, *see Washington*, 494 U.S. at 224 ("[T]he standard of review [the Supreme Court] adopted in *Turner* applies to *all circumstances* in which the needs of prison administration implicate constitutional rights." (emphasis added)), the Court finds it fails as well. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S.

at 89. To survive a motion to dismiss, a prisoner must "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010). Plaintiff does not allege that A.R. 700-29's requirement of denying certain rights while a prisoner is on MHW is not reasonably related to a legitimate penological interest. Therefore, the Court respectfully recommends the claim be dismissed.

## **CONCLUSION**

Accordingly, for the foregoing reasons, this Court recommends that Judge Brimmer dismiss the following claims:

- Claim 1: Eighth Amendment claim against Defendants Gallardo, Krakow, Espinosa, and Doe;

- Claim 2: Eighth Amendment claim against Defendants Maley, Gibson, and Spearing;

- Claim 3: Eighth Amendment claim against Defendant Travis;

- Claim 4: First Amendment claim against Defendant Travis;

- Claim 5: Eighth Amendment claim against Defendants Montoya and Eslinger;

- Claim 6: Eighth Amendment claim against Defendants Cortez, Collins, and Sierra;

- Claim 7: Eighth Amendment claim against Defendant Jones;

- Claim 8: Eighth Amendment claim against Defendants Shoffler and Montoya;

- Claim 9: First Amendment claim against Defendant Raemisch;

- Claim 10: Eighth Amendment claim against Defendant Raemisch;

- Claim 11: Fourteenth Amendment claim against Defendant Raemisch;

- Claim 12: Eighth Amendment claim against Defendant Raemisch;

- Claim 13: Fourteenth Amendment claim against Defendant Raemisch;

- Claim 14: First Amendment claim against Defendant Raemisch;

- Claim 15: Fourteenth Amendment claim against Defendant Raemisch;

- Claim 16: Eighth Amendment claim against Defendant Raemisch;

- Claim 17: Eighth Amendment claim against Defendant Raemisch.

Should the Recommendation be adopted, the following claims will proceed[5]:

- Claim 1: Colorado medical malpractice claim against Defendant Krakow;

- Claim 2: Colorado medical malpractice claim against Defendants Maley, Gibson, and Spearing;

- Claim 7: Eighth Amendment claim against Defendant Keys;

- Claim 12: Fourteenth Amendment claim against Defendant Raemisch.

Accordingly, the Court respectfully RECOMMENDS that Defendants' Motion to Dismiss [filed July 31, 2017; docket #32] the Complaint be **GRANTED**.[6]

---

[5] These claims proceed, because Defendants make no argument that they should be dismissed.

[6] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

Respectfully submitted this 20th day of February, 2018, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge